807 P.2d 734

Don E. HERMAN, Surviving Spouse of
Patricia D. Herman, Deceased,
Petitioner,

v.

MINERS' HOSPITAL, Respondent.

No. 19488.

Supreme Court of New Mexico.

Feb. 28, 1991.

Kastler and Kamm, Terrence R. Kamm, Raton, for petitioner.

Montgomery & Andrews, P.A., Katherine W. Hall, Santa Fe, for respondent.

## OPINION

BACA, Justice.

This appeal is before us on writ of certiorari to the court of appeals. Petitioner Don Herman seeks to appeal the judgment of the court of appeals, which reversed an award of death benefits made by a hearing examiner of the Workers' Compensation Division. We have granted the petition, and we reverse the judgment of the court of appeals, reinstating the award of benefits.

Respondent Miners' Hospital (Hospital) employed Herman's spouse, the decedent, as a nurse. On July 21, 1986, decedent died as a result of a heart attack suffered at work. She had been treated at the Hospital for the heart attack immediately prior to her death, and she died at the Hospital. Decedent's heart attack occurred during a period when she suffered from substantial stress related to her employment. Following her death, the Hospital, as employer, did not file a first report of accident, and petitioner filed a claim for death benefits on July 20, 1988, almost two years after the death.

The Workers' Compensation hearing examiner determined that decedent died in an accident arising out of and in the course of her employment and that her death was causally connected to employment-related stress. The examiner also concluded that the Hospital had actual notice of the accident and that the Hospital's failure to file a first report of accident tolled the statute of limitations. *See* NMSA 1978, §§ 52–1–58 & –59. Accordingly, Herman was awarded benefits as surviving spouse.

The court of appeals reversed in a memorandum opinion, holding that the claim was barred by the notice requirements of the Workers' Compensation Act, NMSA 1978, Section 52–1–29, and that the claim was

barred by the statute of limitations contained in Section 52-1-31(B). We consider those two issues: whether the claim was barred by the notice requirements, and whether it was barred by the statute of limitations, as well as a third issue raised before the court of appeals but not discussed: whether the finding of causation was supported by substantial evidence.[1]

## I. IS THE HEARING EXAMINER'S FINDING THAT DECEDENT'S HEART ATTACK WAS CAUSALLY RELATED TO ON-THE-JOB STRESS SUPPORTED BY SUBSTANTIAL EVIDENCE?

The essence of the Hospital's claim is that Herman failed to carry his burden to show that the heart attack resulted from decedent's employment, and thus there was not substantial evidence supporting the hearing examiner's finding of causation. It argues that under whole record review the finding must be reversed because the totality of the evidence indicates that the finding was not reasonable.

On appeal, to determine whether a challenged finding is supported by substantial evidence, we have always given deference to the fact finder, even when we apply, as here, whole record review. *See Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.*, 101 N.M. 291, 681 P.2d 717 (1984); *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.), *cert. denied*, 109 N.M. 33, 781 P.2d 305 (1988). When applying whole record review, the reviewing court "views the evidence in the light most favorable to the agency decision, but may not view favorable evidence with total disregard to contravening evidence." *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n*, 107 N.M. 278, 282, 756 P.2d 558, 562 (1988) (citations omitted). Substantial evidence on the

whole record is such evidence that demonstrates the reasonableness of the administrative decision. *Id.* To determine whether a finding of fact is amply supported by the whole record, we do not rely solely on one part of the evidence if to do so would be unreasonable. We must find "evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *Id.* We will not, however, substitute our judgment for that of the agency; although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole. *Tallman*, 108 N.M. at 129, 767 P.2d at 368. As long as substantial evidence supports the findings of the hearing officer, an appellate court will not disturb those findings on appeal. *Yates v. Matthews*, 71 N.M. 451, 379 P.2d 441 (1963).

Section 52-1-28(B) requires that where an employer denies a disability is a result of an accident, the claimant "must establish that causal connection as a probability by expert testimony of a health care provider." In other words, Herman had to show by medical evidence that decedent's death and heart attack was a medically probable result of the work-related stress. *See Anderson v. Mackey*, 93 N.M. 40, 42, 596 P.2d 253, 255 (1979).

The Hospital asserts that a possible cause only becomes a probable cause " 'when in the absence of other reasonable causal explanations *it becomes more likely than not that the injury was a result of its action.*' " *Bufalino v. Safeway Stores, Inc.*, 98 N.M. 560, 565, 650 P.2d 844, 849 (Ct.App.1982) (quoting *Parker v. Employers Mut. Liab. Ins. Co.*, 440 S.W.2d 43, 47 (Tex.1969)). *Bufalino* determined that speculation—which "arises when the probabilities of an event happened in one or two

---

**1.** The relevant statute, and that considered by the hearing examiner and the court of appeals, is the one in effect at the time the cause of action accrued, *i.e.* when the employee knew or should have known of the existence of a compensable injury. *Noffsker v. Barnett & Sons*, 72 N.M. 471, 384 P.2d 1022 (1963); *Strickland v.*

*Coca-Cola Bottling Co.*, 107 N.M. 500, 760 P.2d 793 (Ct.App.), *cert. denied*, 107 N.M. 413, 759 P.2d 200 (1988). Accordingly, we apply the statutory provisions in effect on July 1, 1986, and statutory references are to provisions contained in the original 1978 compilation.

ways and there is not evidence as to which way it did happen"—is improper as a basis for determining causation. *Id.* The Hospital, however, does not reflect on *Bufalin o*'s determination that the fact finder is given deference when faced with conflicting medical testimony regarding causation and medical probability. *See id.; see also Yates,* 71 N.M. at 453–54, 379 P.2d at 442–43 (trier of fact must resolve disagreement and determine true facts). As we will show, our review of the evidence indicates this latter proposition is dispositive.[2]

■ Three medical experts presented evidence, two on behalf of Herman and one for the Hospital. All testified that several factors could cause a heart attack and that several of the factors were present in decedent. Stress was identified as a minor risk factor. All of the experts agreed that smoking, high cholesterol, high blood pressure, diabetes, and a family history of heart disease were major factors. The Hospital's expert indicated that job-related stress was one of many minor factors, while Herman's experts testified it was one of four minor factors. The Hospital's expert testified that as the number of risk factors present in a patient increased, the risk of heart attack multiplied. One of Herman's experts testified that stress appeared to have exacerbated decedent's high blood pressure, which caused heart damage. This evidence was contradicted by other testimony.

■ We conclude that, even under whole record review, the testimony supports the hearing examiner's findings. Whole record review is not an excuse for an appellate court to reweigh the evidence and replace the fact finder's conclusions with its own. It allows the reviewing court greater latitude to determine whether a finding of fact was reasonable based on the evidence, and we hold that, in this case,

even though the examiner was faced with conflicting evidence, its finding was reasonable. In *Oliver v. City of Albuquerque,* 106 N.M. 350, 352, 742 P.2d 1055, 1057 (1987), we noted that when a pre-existing condition is aggravated by employment-related stress, the requirement of a job-related injury is met. Thus, Herman only had to show to a medical probability that the stress aggravated what may have been a pre-existing condition.

In the present case, the Hospital's expert stated there was no causal connection, and one of claimant's experts is contended to have been discredited. However, claimant's other expert, a cardiologist, presented evidence to the effect that stress, although a minor risk factor when compared to several major risks that afflicted decedent, is a factor causing heart attacks. Evidence also was presented that the more factors present in a patient, the greater the likelihood of heart disease. Thus, the evidence is sufficient for us to sustain the fact finder under the *Oliver* standard and applying whole record review. Herman was not required to prove that stress was the only factor causing the fatal heart attack; he needed to show that the heart attack more likely than not was the result of stress. *Bufalino,* 98 N.M. at 565, 650 P.2d at 849.

We find the evidence presented here susceptible to a conclusion similar to that articulated in *Oliver.* To conclude otherwise, under these facts, would sanction a rationale that a finder of fact could never reach a determination of "medical probability" when opposing parties presented experts with diametrically opposed opinions. Conflicting evidence does not, by itself, demand a conclusion that only a "medical possibility" has been shown. The evidence presented here, simply stated, is that stress is a factor, albeit minor, in causing heart disease; the risk of heart disease multiplies

---

2. The Hospital also refers us to *Renfro v. San Juan Hospital, Inc.,* 75 N.M. 235, 403 P.2d 681 (1965). In that case, however, the medical evidence could at best indicate that the work-related accident was one possible cause of plaintiff's injuries, whereas in this case, although certain medical evidence indicated that the immediate cause of the heart attack was stress, other evidence was to the effect that stress was not the cause. In other words, the instant case presents us, as it did the hearing examiner, with conflicting evidence that required the finder of fact to determine facts based on its evaluation of credibility, demeanor, and other relevant factors, not evidence that required the fact finder to speculate as to causation.

with each additional risk; decedent was under employment-related stress both from an incident the day of her attack and from daily stress, and she had a heart attack. Moreover, there was contested evidence that, as evidenced by the autopsy, stress exacerbated decedent's hypertension and that absent the stress, decedent would have lived another five to ten years. There was sufficient medical testimony presented to support the hearing examiner's decision.

## II. DID THE HOSPITAL HAVE ACTUAL NOTICE?

Section 52–1–29(B) excuses the written notice requirements of subsection (A), and states:

> No written notice is required to be given where the employer or any superintendent or foreman or other agent in charge of the work in connection with which the accident occurred had actual knowledge of its occurrence.

The Hospital argues that we are presented with a narrow legal issue: whether knowledge of an on-the-job heart attack constitutes actual knowledge of an accident sufficient to satisfy Section 52–1–29(B). This appears to be the position of the court of appeals, which, despite the hearing examiner's finding of actual notice based on the Hospital employees' knowledge of the time, place, and circumstances of the accidental death, determined that "there is no evidence in the record that [the Hospital] knew that the heart attack was caused by the decedent's employment."

■ In a workers' compensation case where a dependent seeks benefits based on

the worker's death by heart attack, the death is analyzed as the disability, the heart attack as the injury, and the employment-related stress as the accident. *Oliver*, 106 N.M. at 351, 742 P.2d at 1056 (analyzing whether a fire fighter who died as a result of a heart attack was entitled to benefits pursuant to Section 52–1–28). In the instant case, the hearing examiner made a finding that the Hospital had actual notice based on the circumstances. Those circumstances incontrovertibly included knowledge of the heart attack (the injury) and the death (disability). The remaining questions of fact were whether the Hospital had knowledge of the job-related stress (the accident) and causation between the accident and the injury, and the examiner found that it did.

■ We conclude that ample evidence supports the finding of knowledge under the unique facts and setting of this case. The Hospital knew of the decedent's heart attack—not only did she suffer the heart attack at work, but she was treated and died there. The Hospital also knew of her stressful schedule. Decedent worked a forty-hour week; she was on call an additional eighty hours a week, she attended school, and she was involved in merger plans, all with the Hospital's knowledge. Moreover, testimony indicated that decedent had an argument with one of the hospital's surgeons on the day of her death.[3]

■ The court of appeals rejected petitioner's argument that Section 52–1–29(B) was satisfied because the Hospital's

---

**3.** The Hospital argues that the purported knowledge of the testifying physician (who apparently was an independent physician at the Hospital and was not on the staff) regarding job-related stress does not establish the Hospital's knowledge of the accident. In this regard the Hospital misapprehends the role of an appellate court in reviewing the evidence and the function of circumstantial evidence in establishing facts, including actual knowledge. *See Professional Insurors, Inc. v. Buck Scott & Son Motor Co.,* 110 N.M. 299, 795 P.2d 991 (1990). We extend every reasonable inference to the finder of fact to determine whether a finding is supported. In this case, in the context of the hospital setting, we find the hearing officer's inferences from the testimony of the physician (even assuming *arguendo* that his knowledge does not constitute knowledge of the Hospital) that a staff physician, who induces stress by dressing down an employee, has knowledge of a stressful environment and therefore knowledge of the accident. We reject the Hospital's argument that only the knowledge of decedent's immediate supervisor or the knowledge of the personnel director are relevant. In a hospital setting, the knowledge of a staff surgeon may suffice to meet the requirements of Section 52–1–29(B). Moreover, we find the examiner's finding of actual knowledge of the accident a reasonable inference from the Hospital's knowledge of decedent's schedule in the context of the hospital setting.

knowledge of decedent's death by heart attack at work constituted knowledge of the accident. We agree with that court to the extent that it opined that the employer must have knowledge of the accident, not merely the injury, *see Herndon v. Albuquerque Public Schools*, 92 N.M. 635, 593 P.2d 470 (Ct.App.1978), and that, although a heart attack can be compensable under New Mexico law, *see Oliver*, 106 N.M. at 352, 742 P.2d at 1057; *Sanchez v. Board of County Comm'rs*, 63 N.M. 85, 313 P.2d 1055 (1957), not every heart attack is compensable—it must relate to the employment. *See Wilson v. Navajo Freight Lines, Inc.*, 73 N.M. 470, 473, 389 P.2d 594, 596 (1964). An element of causation must be present, and the employer must have knowledge that a work-related accident caused the injury for the actual notice requirement to be met. *See Herndon*, 92 N.M. at 642, 593 P.2d at 477; 2B A. Larson, *The Law of Workmen's Compensation* § 78.31(a)(2). The employer has actual notice of a job-related accident as required by the statute when he has knowledge of the injury and "some knowledge of accompanying facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim." 2B A. Larson, *supra*, § 78.31(a)(2) at 15–133 to –136 (footnotes omitted); *see Collins v. Big Four Paving, Inc.*, 77 N.M. 380, 383, 423 P.2d 418, 420 (1967) (actual knowledge "does not mean first-hand knowledge, but only 'knowledge' as the word is used in common parlance * * *. '[A]ctual knowledge' is knowledge sufficient to impress a reasonable man, i.e., knowledge obtained in the daily affairs of life, but not absolute certainty.") (citations omitted).

The finding that the Hospital had actual knowledge of the circumstances of decedent's accidental death, which we have found supported by the evidence, constitutes a finding of causation. Such a conclusion need not rest on the admittedly flimsy logic that knowledge of the stress, heart attack, and death necessarily leads to the conclusion that an employer knew of causation. The hearing examiner was enti-

tled to draw inferences from the facts presented. *See Powers v. Riccobene Masonry Constr., Inc.*, 97 N.M. 20, 636 P.2d 291 (Ct.App.1980). The totality of the facts and circumstances determine whether an employer has actual knowledge of a compensable injury. *Rohrer v. Eidal Int'l*, 79 N.M. 711, 713, 449 P.2d 81, 83 (Ct.App. 1968). The examiner could reasonably infer from the evidence presented that the Hospital through its employees knew that the work-related stress induced the heart attack and gave rise to a potential claim.

█ Moreover, the reasons and policies underlying the notice requirement support our conclusion. The requirement is designed to protect the employer, allowing it to investigate the facts and circumstances surrounding an injury while the facts are accessible. It allows the employer to act to prevent the filing of fictitious claims and to make sure an injured employee receives proper medical attention. *See Herndon*, 92 N.M. at 641, 593 P.2d at 476 (citing *Ogletree v. Jones*, 44 N.M. 567, 106 P.2d 302 (1940)); *Beckwith v. Cactus Drilling Corp.*, 84 N.M. 565, 568, 505 P.2d 1241, 1244 (Ct.App.), *cert. denied*, 84 N.M. 560, 505 P.2d 1236 (1973). Under the circumstances of the instant case, it is apparent that the reasons behind the notice requirement cannot be further served. The Hospital was in as good a position (if not better) as decedent or Herman to investigate the situation and provide prompt medical assistance. *See Collins*, 77 N.M. at 383, 423 P.2d at 420 (although bodies not yet discovered, employer and insurer had benefit of all known facts within a few days of decedents' disappearance in plane wreck, and under the circumstances further investigation would serve no purpose).

The court of appeals apparently felt compelled to reverse the hearing examiner by our opinion in *Wilson v. Navajo Freight Lines, Inc.*, 73 N.M. 470, 389 P.2d 594 (1964). In *Wilson*, the fact finder had *denied* the employee-claimant benefits. The employee had been a truck driver who, while driving through Missouri for the defendant-employer, suffered a heart attack. The employer was not given written notice,

and we refused to hold that, as a matter of law, the employer's notice of a heart attack that occurred on the job constituted knowledge of the accident. *Id.* at 473, 389 P.2d at 596. *Wilson* is readily distinguished from the case at bar. The hearing examiner found actual notice based on the unique circumstances and setting of this case, and on review we find substantial support for that finding.[4]

### III. WAS THE STATUTE OF LIMITATIONS TOLLED?

 NMSA 1978, Section 52–1–58 requires an employer to file a written report of a compensable accidental injury suffered by an employee with the labor commissioner within ten days of the injury. Section 52–1–59 provides that the effect of a failure to file is that no claim for compensation is barred prior to the filing of the appropriate report. Section 52–1–31(B) contains the otherwise applicable statute of limitations and the procedure for filing a claim upon the death of a worker for which compensation may be received. Eligible dependents are entitled to recover benefits, although no claim can be filed unless notice has been given as required by Section 52–1–29 and a claim is filed within a year of the worker's death.

In the present case, the claim was filed almost two years after decedent's demise. The hearing examiner, however, found the statute of limitations was tolled and the claim was not barred because of the Hospital's failure to file a first report of accident as required by Section 52–1–58. The court of appeals held otherwise, determining that, because it reversed the examiner's finding of actual notice, *Wilson* required the conclusion that the statute of limitations was not tolled. *See* 73 N.M. at 474, 389 P.2d at 596. Although the court of appeals properly construed *Wilson*, it applied an erroneous factual predicate. Our conclusion that the Hospital did have notice mandates the application of Section 52–1–59 to toll the time limitation. The Hospital had actual notice of the compensable injury, yet failed to file a written report as required. Thus, we hold that the claim is not time barred. *See Wilson*, 73 N.M. at 474, 389 P.2d at 596; *Sanchez v. Bernalillo County*, 57 N.M. 217, 257 P.2d 909 (1953); *Cisneros v. Molycorp, Inc.*, 107 N.M. 788, 765 P.2d 761 (Ct.App.), *cert. denied*, 107 N.M. 785, 765 P.2d 758 (1988).

Accordingly, we reverse the decision of the court of appeals and reinstate the judgment of the workers' compensation hearing officer.

IT IS SO ORDERED.

SOSA, C.J., and FRANCHINI, J., concur.

---

4. Moreover, a common-sense consideration of this problem demonstrates the logic of our conclusion and the reasonableness of the hearing examiner's inferences. Whereas a trucking company may not be in a position to know reasonably that a heart attack suffered by a driver somewhere in Missouri is related causally to the employment and, therefore, the result of a work-related accident, a hospital could know reasonably that a heart attack suffered by a nurse while under stress both from an incident that same day and from the daily demands of her occupation is connected causally to her employment, at least to the extent that it has notice of a potential claim.